Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9202 | **DATE** | 11/30/2004 |
| **CASE TITLE** | Patricia L. Nowak vs. OCE-USA, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Nowak has not shown that there were similarly situated employees who were treated more favorably, and therefore, Nowak also fails to rebut Oce's legitimate, non-discriminatory reason for Nowak's termination. Summary judgment in favor of Oce is appropriate. Defendant's motion for summary judgment (11-1) is granted. The status hearing and for filing of the joint pretrial order set for 12/30/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC - 1 2004 | 22 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/30/2004 | |
| | | | date mailed notice | |
| | GL | courtroom deputy's initials | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| PATRICIA L. NOWAK, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 03 C 9202 | **DOCKETED** |
| | ) | | |
| OCE-USA, INC., | ) | | DEC -1 2004 |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Patricia L. Nowak filed a one-count complaint against her former employer Oce-USA, Inc. for retaliatory discharge in violation of the Family Medical Leave Act ("FMLA"). 29 U.S.C. § 2601 *et seq*. Nowak claims that she was terminated from her position at Oce for exercising her rights to take leave due to her continuing treatment for cancer and for her father's death in violation of the FMLA. Oce has moved for summary judgment on the grounds that Nowak cannot establish a prima facie case for FMLA-related retaliatory discharge and cannot demonstrate that Oce's stated reason for termination, poor job performance, is merely a pretext. For the reasons stated below, we grant Oce's motion and dismiss the case.

### I. FACTUAL BACKGROUND[1]

On March 4, 1996, Patricia Nowak ("Nowak") began her employment with Oce-USA, Inc. ("Oce") as a marketing secretary. After Nowak was with the company just over a year, she was diagnosed with a form of cancer known as Hodgkin's lymphoma. Oce provided Nowak with leave,

---

[1] These facts are culled from the parties' Local Rule 56.1 statements of undisputed facts. For purposes of a motion for summary judgment, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 255 (1986).

during which she received short-term disability benefits, from March 7, 1997 to August 25, 1997, while she was undergoing treatment. The first twelve weeks of this leave was considered FMLA leave under Oce's policy. Nowak returned to work full-time on August 25, 1997. In February 1998, Nowak applied for the position of Direct Marketing Coordinator ("DMC"), as the position later became known. Nowak interviewed twice with Ted Schmuldt ("Schmuldt"), who supervised the position as Manager of Marketing Support. During her second interview, she informed Schmuldt of her medical situation and her need to have time off to go for monthly follow-up appointments and semiannual CT scans, and Schmuldt accepted this information without incident. Schmuldt offered the DMC position to Nowak and agreed to her request for more pay. Nowak began her new job as DMC on April 6, 1998.

As a DMC, Nowak was responsible for implementing Oce's direct marketing programs for wide-format printing in the eastern region of the United States. Specifically, Nowak was responsible for making telephone calls to and contacts with potential customers, investigating sales leads, and qualifying those leads for follow-up by the Oce sales force. Lead qualification was a process by which DMCs identified certain information about potential customers and then determined whether a customer was ready to buy an Oce product.

Schmuldt and Joyce Virnich, as the Vice President of Marketing, established goals for the DMCs regarding the various aspects of their job. Early on in Nowak's tenure as a DMC, performance goals focused on the daily average outbound calls and contacts made.[2] DMCs' performance and achievement of these goals were documented in performance evaluations that the DMCs received mid-year and end-of-year. In her first performance evaluation as DMC in October 1998, Schmuldt reviewed Nowak's performance as a 3.0 out of 5.0, or "Meets Expectations." He commented that "[t]he transition period

---

[2]The daily averages for outbound calls and contacts were calculated by comparing the number of days worked in a month and the total number of calls or contacts made in that same month, omitting any time off or time spent in training.

from an administration function to a customer contact function will have a period of adjustment. Patti is showing progress and experience will help her increase performance levels." Nowak testified that sometime in the Fall of 1998, Schmuldt accused her of accepting the DMC position "to take advantage of time off for [her] medical appointments." Oce denies that Schmuldt made this statement.

In December 1998, Nowak was re-diagnosed with cancer, necessitating a second leave of absence. Oce granted Nowak leave beginning December 11, 1998, and she was scheduled to return to work in March 1999. When Nowak later requested to extend her leave beyond March 1999, Oce agreed to extend it until June 1999. Under Oce's policy, the first 12 weeks of this leave were considered FMLA leave. Prior to returning from leave, Nowak asked to return to work on a part-time basis. Although a part-time position did not exist in Nowak's group at the time, Schmuldt accommodated her request and created a part-time position that Nowak began on June 10, 1999. On October 2, 1999, Nowak was able to return to work full-time and her doctor indicated that she would require monthly follow-up appointments and intermittent CT scans. Following her return to full-time work, Nowak received a rating of 3.1 on her 1999 end-of-year evaluation.

From 2000 to 2001, Nowak's performance was rated very positively. On her 2000 mid-year evaluation, Nowak received a rating of 3.6, maintaining a monthly average of 65 outbound calls and 18 contacts per day, compared to set goals of 65 and 20 respectively. On her 2000 end-of-year evaluation, Nowak received a performance rating of 3.5, and on her 2001 mid-year evaluation, she received a 3.6, averaging 43 outbound calls and 19 contacts per day, compared to set goals of 40 and 20. At some point, either in 2000 or 2001, Schmuldt informed Nowak that he was considering issuing Nowak a "Letter of Concern" regarding her not abiding by Oce's absenteeism policy. He decided not to do so, but he did tell Nowak that she "need[ed] to watch [her] time off, because it's being depleted." On her 2001 end-of-

year evaluation, Nowak received a performance rating of 3.7, although Schmuldt also commented on the review that "[i]mprovement is needed in adhering to Oce's policy on absenteeism."

In early 2002, Nowak's performance on outbound calls and contacts began to decline. On her mid-year 2002 evaluation, Nowak received a 3.4 rating, averaging 35 outbound calls per day and 14 contacts. Schmuldt advised Nowak in this evaluation to bring these averages up to the established targets of 40 and 20, respectively. Schmuldt also observed in this evaluation that Nowak's "[a]vailable sick/personal time for the year is almost depleted." In August 2002, Nowak had a CT scan that contained an abnormality, and her oncologist required her to schedule additional consultations. When Nowak informed Schmuldt, he asked her if she could arrange to go to the appointments at night or on the weekends. Oce has a company policy that states that employees who take leave based on their own serious health condition must "make reasonable effort to schedule treatment so as to not disrupt unduly the Company's operations." Nowak responded that she could not schedule appointments outside of work hours, and, subsequently, Schmuldt did not deny her leave to go to the appointments.[3] Leave for Nowak to attend these appointments was covered under the FMLA.

During this time, Nowak believed that Schmuldt's behavior toward her became negative, and, consequently, she felt unable to function in her role as a DMC and felt uncomfortable asking for advice. She also felt "out of the loop" on a new database system when she missed the beginning of training due to absence. However, she eventually received all of the information and training on the system. Nowak met with Colleen Razo, the Manager of Human Resources, to talk about her concerns about Schmuldt's behavior. In mid-September 2002, Nowak met with Schmuldt and Razo to discuss the negative change in behavior. At the meeting, in response to Nowak's comments about being adequately trained on the

---

[3]In September 2002, Nowak requested a leave of absence because of "issues related to cancer," although she indicated that the leave was a "personal request" and "not really anything for my doctor." The request, which was for personal leave, not FMLA leave, was denied.

4

database system, Schmuldt said that Nowak was trained for the full day that everyone else was, and then made a comment, "well, I didn't pamper her," at which point Nowak left the meeting.

In October 2002, Schmuldt issued a "Letter of Concern" to Nowak, warning her that she was not meeting the targets set for outbound calls and contacts and cautioning that her developing pattern of excessive tardiness was likely impacting her performance. On her 2002 end-of-year evaluation, Nowak received a performance rating of 3.4. Around this time, Schmuldt established a specific performance goal for the number of qualified leads each DMC generated on a monthly basis, in addition to the current performance goals for outbound calls and contacts. On her 2003 mid-year evaluation, Nowak was rated a 2.48, falling between "Needs Improvement" and "Meets Expectations." Schmuldt noted that Nowak averaged only 14 contacts per day, compared to a goal of 20, and that she produced 292 qualified TDS leads, which was 68% of the TDS qualified lead goal. Schmuldt also noted that "Patti has used up all available sick/personal time . . . . Her performance for lead generation continues to drop . . . . [P]roper attendance plays a crucial role in obtaining our goals. Patti needs to immediately improve her attendance and focus on meeting lead generation goals."[4] On July 15, 2003, Schmuldt issue Nowak another Letter of Concern, which indicated that "immediate improvement is required" on the qualified TDS lead goal, noting that she had failed to reach her goal for six of the last seven months. The letter stated that her performance would be reviewed each month over the next three months. It also noted that "unscheduled absence is also an issue and it directly impacts your ability to produce the expected number of leads." Regarding the qualified lead goal, Nowak testified at her deposition that "I was aware of my performance drop . . . . I was well aware of my performance and was trying to improve." On September 8, 2003, Nowak was issued a "Final Letter of Concern," which stated that Nowak had still

---

[4]The parties dispute exactly how much leave Nowak had taken off and how much of it was FMLA-related during the first half of 2003. However, there is no dispute that Nowak had taken off at least 99.5 hours and that less than half of this was FMLA-related.

only achieved 68% of her qualified lead goal. It also stated that her failure to meet targets and expectations would result in termination of employment at the end of a thirty-day review period.

During this thirty-day period, Nowak's father died, and she took an approved seven-day bereavement leave. Because of this bereavement leave, Nowak was given an additional seven days to meet her performance goals, and during her absence, leads qualified by Nowak's two fellow DMCs from some follow up calls were credited to Nowak's lead quota. By the end of the thirty-seven day period, Nowak still fell short of the qualified lead sales goals, and she was terminated on October 13, 2003.

## II. STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c).

In considering the motion, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson*, 477 U.S. at 255. However, a plaintiff cannot simply rest on mere allegations of a claim without any significant probative evidence that supports his or her complaint. *Id.* at 248. The use of self-serving assertions, without factual support in the record, will not defeat a motion for summary judgment. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998). Where a party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Celotex Corp.*, 477 U.S. at 322-23.

## III. ANALYSIS

In order to assert a claim for retaliatory discharge under the FMLA, a plaintiff must establish that the employer engaged in intentional discrimination against her for exercising her FMLA rights. *See King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999). The plaintiff in a retaliation case has two distinct routes to obtaining or preventing summary judgment: (1) directly, by presenting direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity and as a result suffered the adverse employment action; or (2) indirectly, by meeting the burden-shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *King*, 166 F.3d at 892. Nowak has failed to make a showing establishing the essential elements of a claim for FMLA retaliatory discharge under either of these two routes, and, therefore, we grant Oce's motion for summary judgment.

### A. Direct Evidence Test

Under the "direct" route to establishing a claim for FMLA retaliation, a plaintiff must provide direct evidence of a causal link between the protected activity – in this case, the exercise of a protected FMLA right – and the adverse employment action. *King*, 166 F.3d at 479. Inferences and circumstantial evidence cannot be used to establish a prima facie case for retaliation under the direct evidence test. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Here, the evidence presented by Nowak, viewed in the light most favorable to her, is not direct evidence, but rather can only be considered circumstantial evidence of a causal link between her exercise of FMLA rights and her termination. Furthermore, even

7

if we were to consider her evidence under the direct evidence test, it fails to establish a causal link between the FMLA leave taken by Nowak and her termination.

Nowak's retaliation claim is premised upon several comments that Schmuldt made to her over the course of the time she worked under his supervision and upon the "negative relationship" that developed between them in the later years. Specifically, with regard to Schmuldt's comments, Nowak presents several pieces of evidence: (1) in Fall 1998, Schmuldt accused her of accepting the DMC position "to take advantage off time of for [her] medical appointments;" (2) beginning in 2000, Schmuldt raised the issue of Nowak's absences from work and advised her to "watch her time off;" (3) in 2000, Schmuldt stated that he wanted to issue Nowak a Letter of Concern on her absenteeism, but he reconsidered and did not place the letter in her file; (4) in 2001, Schmuldt's performance reviews contained references to Nowak's absenteeism and her available sick and personal time being depleted; (5) in August 2002, Schmuldt "probed" Nowak as to whether she could arrange to have her medical appointments following an abnormal CT scan scheduled after work hours.

These statements and written comments, if true, made sparsely over the course of five years, are, at best, circumstantial evidence that Schmuldt was concerned about Nowak's absences from work. The large majority of the comments Schmuldt is accused of making reflect no retaliatory intent with regard to Nowak's FMLA exercise at all, but were merely comments noting the depletion of her allotted leave time. Schmuldt's query in August 2002 as to whether Nowak could schedule medical appointments outside of work hours likewise cannot be considered direct evidence of retaliatory intent, as it was consistent with Oce's company policy that employees who take leave based on their own serious health condition must "make reasonable effort to schedule treatment so as to not disrupt unduly the Company's operations." In addition, Schmuldt admittedly did not deny Nowak time off to go to the appointments when she told him she could not schedule them outside of work hours. Finally, to the extent that

Schmuldt's alleged comment that Nowak took the DMC position "to take advantage of time off for her medical appointments" is inappropriate, this isolated comment made five years before she was terminated, the interim during which Nowak received many positive performance reviews, is not the type of direct evidence that shows an illegal motive. *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (stray remarks of a derogatory character do not show direct discrimination unless they are related to the adverse employment action); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999) ("Inappropriate, but isolated comments that amount to no more than 'stray remarks' in the workplace will not do," as direct evidence of discriminatory motives.).

With regard to the "negative relationship" that Nowak claims developed between her and Schmuldt, Nowak directs us to evidence of Schmuldt's changed attitude towards Nowak after learning about her need to schedule medical appointments due to an abnormal CT scan in August 2002. Schmuldt points to the facts that: (1) Schmuldt exhibited "complete disrespect" for her, failing to communicate with her or assist her with the new database system; (2) Schmuldt "mocked" Nowak in a meeting concerning their problematic working relationship when he said, "well, I didn't pamper her;" (3) she was subject to increased hostility from Schmuldt without alleviation from internal resources who would not grant her a requested extended personal leave; and (4) she was subject to unreasonable increasingly demanding performance goals, when considered in light of the negative relationship. Again, however, this is not direct evidence of a causal link between Nowak's termination and her exercise of FMLA rights, but rather is, at best, circumstantial evidence from which one might infer a changed attitude on the part of Schmuldt. Furthermore, Nowak has not presented any evidence that she was actually treated differently from other DMCs after she informed Schmuldt of her need to schedule medical appointments in August 2002. Instead, her claim is primarily based upon her perception and feelings of a change in her working relationship with Schmuldt. The facts show that Nowak received

9

the same training that the other DMCs did on the new database system,[5] and that she was subject to the same performance goals as the other DMCs. The evidence presented fails to establish the "causal link" between Nowak's exercise of her FMLA rights and her termination on October 13, 2003. Therefore, there is no showing of a genuine issue of material fact as to Nowak's FMLA retaliation claim under the direct evidence method.

### B. Indirect Evidence Test

Under the "indirect evidence" test for a FMLA retaliation claim, we apply the burden-shifting test established by *McDonnell-Douglas Corp. v. Green*. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). First, the plaintiff must put forth a prima facie case of retaliation. *Id.* The prima facie case requires that a plaintiff show that (1) she was engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; (3) she was performing her job in a satisfactory manner; and (4) she was treated less favorably than any other similarly-situated employee who did not engage in such protected activity. *See id.*; *Brown v. Chicago Sun-Times, Inc.*, No. 00-C-6728, 2004 WL 31844984, *5 (N.D. Ill. Dec. 17, 2002). Secondly, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999). Finally, if the defendant rebuts the plaintiff's prima facie case, the plaintiff bears the burden of persuasion to demonstrate that the employer's stated reasons were false and that discrimination was the real reason for the adverse employment action, i.e., the stated reason is merely a pretext. *Id.*

---

[5]In her deposition testimony, Nowak states that she was not there for the "take-off" of the new database system, but this was because she was absent, not because she was excluded by Schmuldt. Nowak also testified that she eventually did get the information and training she needed to use the system.

The parties do not dispute that Nowak has satisfied the first two prongs of the prima facie case, showing that (1) she was engaged in taking leave that was protected by the FMLA, and (2) her termination was an adverse employment action. However, Oce contends that Nowak has failed to meet the third and fourth prongs because she has not shown that she was performing her job in a satisfactory manner or that she was treated less favorably than similarly-situated employees who did not take FMLA leave.

Under the third prong of the prima facie case for FMLA retaliation, Nowak must show that she was performing her job in a satisfactory manner. *Stone*, 281 F.3d at 644. The undisputed facts establish that beginning in 2002 and continuing until her termination, Nowak was not meeting the performance goals established for all DMCs. After several years of satisfactory job performance, Nowak's performance began to decline in mid-2002. Nowak's performance continued to decline, and by mid-2003, she had failed to meet her target for qualified leads.[6] Nowak's performance was measured against established numerical targets, and the numerical targets applied to all DMCs. Nowak testified that she "was aware of [her] performance drop." Furthermore, Nowak was issued two Letters of Concern in 2003, giving her specific notice of the problems in her job performance in terms of qualified leads. Specifically, the July 15, 2003 letter indicated that she had failed to reach her qualified lead goal for six of the last seven months and that her performance would be reviewed on a monthly basis over three months. When she failed to meet this goal in September, she was issued a second Letter of Concern giving her another thirty days to meet the established monthly goal and noting that if she was unable to do so, she would be terminated. It was after she was still unable to reach the performance goal, after

---

[6]Nowak's performance in obtaining outbound calls and contacts had also declined during 2002 and outbound contacts remained a problem through 2003. However, she had shown improvement in reaching her goals in these areas, and outbound calls and contacts were not the basis for her termination in October 2003.

11

being given an additional seven days, following her seven-day bereavement leave for her father's death, that she was terminated. Based upon these undisputed facts, Nowak has not shown that she was performing her job in a satisfactory manner.

Nowak argues, however, that she need not demonstrate satisfactory performance where she can show that similarly situated employees, who did not engage in FMLA leave and who failed to meet performance goals, were treated more leniently. The court may bypass the satisfactory performance element of the prima facie case in such situations. *See Curry v. Menard, Inc.*, 270 F.3d 473, 477-78 (7th Cir. 2001); *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). Thus, essentially conceding that she cannot show satisfactory performance, Nowak's case for FMLA retaliation under the indirect method of proof depends upon whether she can show that she was treated less favorably than similarly situated employees who did not exercise FMLA rights, i.e., establish the fourth element of the prima facie case.

A similarly situated employee is an individual that "is similarly situated with respect to performance, qualifications, and conduct." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)). For purposes of showing that two employees were similarly situated, the employees normally must have "dealt with the same supervisor, [been] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 580 (7th Cir. 2003).

Nowak has identified three individuals whom she claims were similarly situated employees that did not exercise FMLA rights and were treated more leniently for poor job performance: Roy Domontay, Tracey Gans, and Ana Williams. However, when examining each of these employees, the facts show that these employees were not treated more leniently than Nowak for poor performance. Furthermore,

12

when comparing these employees to Nowak with regard to lead qualification, the performance factor that led to Nowak's termination, it is also clear that these individuals were not similarly situated to Nowak.

Roy Domontay was a DMC in the "Narrow Format" division of OCE, whereas Nowak was a DMC is the "Wide Format" division. The facts show that as an employee in a different division, Roy Domontay is not comparable to Nowak. Although the Narrow Format division did report to Schmuldt, it was only for a short time and on an experimental basis. Furthermore, the Narrow Format division marketed different products to different customers compared to the Wide Format division. The market for the Narrow Format division was also quite different from that for the Wide Format division at OCE. Most significantly, DMCs in the Narrow Format division were never subject to a qualified lead goal like those in the Wide Format division. On this basis, we cannot find that Domantay is similarly situated to Nowak.

Nowak also attempts to compare herself to Tracey Gans, who, like Nowak, was a DMC in the Wide Format division. Nowak states that, like herself, Gans failed to meet outbound call and contact goals but, unlike herself, was not issued a Letter of Concern. However, the evidence shows that Schmuldt followed consistent procedures with regard to Nowak and Gans by first issuing each of them a warning when goals were not met. Nowak received a Letter of Concern only when she failed to improve after the initial warning. Furthermore, Nowak was terminated in October 2003 for failing to meet her qualified lead goal, and not because of her outbound calls and contacts. When comparing Gans to Nowak on performance for qualified leads in their mid-year 2003 evaluations, Gans had achieved 235% of the DGS lead generation goal and 109% of the TDS lead generation goal, compared to Nowak's 133% on DGS and 68% on TDS. Tracey Gans, therefore, cannot be considered similarly situated to Nowak, nor was she treated more leniently for unsatisfactory performance.

13

Finally, Nowak identifies Ana Williams as a similarly situated employee who was treated more leniently. Nowak states, like herself, Williams was issued a Letter of Concern with regard to her outbound calls and contacts and continued to be deficient on her goals in the following months, but unlike Nowak, Williams was not issued additional letters or put on an improvement plan. However, the facts show that after Williams' September 2000 Letter of Concern, she did improve in the following months, exceeding the goal for outbound calls, and falling within the acceptable range for outbound contacts. Furthermore, the additional letters and improvement plan that Nowak was placed on were based upon her failure to attain the goal for qualified leads. Because Williams left in April 2002, she was never subject to the qualified lead goal that was established in late 2002/early 2003, which was the basis for Nowak's termination. Nowak has not shown that Williams is similarly situated or was treated more leniently for unsatisfactory performance. Nowak has failed to show that there is any similarly situated employee who did not exercise FMLA rights and who was treated more leniently for unsatisfactory performance. She has failed, therefore, to establish the fourth element of a prima facie case for FMLA retaliation under the indirect method of proof.

Even assuming, *arguendo*, that Nowak did establish a prima facie case of retaliation under the FMLA, Nowak fails to rebut Oce's legitimate non-discriminatory reason for her termination, i.e., that she failed to meet the established goal for generating qualified leads. Nowak has not provided evidence that Oce's stated reasons were false and a pretext. *See King*, 166 F.3d at 892-93 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."). Oce's stated reason for terminating Nowak is her continued failure to generate qualified leads. Oce has presented ample evidence in the form of performance evaluations, letters of concern, and deposition testimony from both parties that indicates that Nowak was terminated because of her failure

14

to meet her goal for qualified leads after being warned and given multiple opportunities to show improvement. Nowak admitted in her testimony that she was aware of the problems in her performance regarding qualified leads. Nowak's argument for pretext is based entirely upon "reasonable inferences" from the evidence showing Schmuldt's animus and the fact that similarly situated employees were not treated as Nowak was. However, as described above, Nowak has not shown that there were similarly situated employees who were treated more favorably, and, therefore, Nowak also fails to rebut Oce's legitimate, non-discriminatory reason for Nowak's termination. Summary judgment in favor of Oce is appropriate.

## IV. CONCLUSION

For the reasons stated above, Oce's motion for summary judgment is granted.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 11/30/04